**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

ADVANCED MEDICAL GROUP OF CENTRAL FLORIDA LLC, and VINAY KATUKURI MD,

Plaintiffs,

v.

BTL INDUSTRIES, INC.,

Civil Action No. 1:25-cv-14016-JEK

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs Advanced Medical Group of Central Florida, LLC and Vinay Katukuri, MD (collectively "Plaintiffs") respectfully notify the Court of *AIM Group, LLC v. BTL Indus., Inc.*, No. 1:26-cv-12129-AK, Dkt. 97 (D. Mass. Sept. 30, 2026) (Kelley, J.), a copy of which is attached as Exhibit A. In *AIM Group*, the Court denied Defendant BTL Industries, Inc.'s ("BTL") motion to dismiss fraud and negligent misrepresentation claims arising from a 2022 BTL sales presentation that included many of the statements alleged here. *Compare* AIM Dkt. 97 at 2, *with* Am. Compl. ¶ 20 (Dkt. 124). The decision bears on the following issues raised in BTL's motion.

1. **Actionable statements of fact.** The Court held that statements that Emsculpt "brings in 51% more new patients to practices" and that providers pay off the device within a stated period "contain specific, numerical representations of present, rather than future, facts that could be shown to be false." AIM Dkt. 97 at 5–6 (citing *Mark Breiner DDS, LLC v. BTL Indus., Inc.*, 2026 WL 114405, at *10–11 (D. Mass. Jan. 15, 2026), which denied dismissal as to an "average payoff of four to five months" statement). Plaintiffs allege both statements. Am. Compl. ¶ 20(c), (i). *Cf.* Dkt. 127 at 18–19; Dkt. 131 at 3.

2. **Scienter.** The Court held scienter adequately pleaded where the plaintiffs alleged that BTL "exercises substantial control over the market size by setting the RPM-mandated

minimum price for treatments," and where "it is reasonable to infer that, as a company engaged in selling proprietary products, BTL would have knowledge of the market size of its equipment." AIM Dkt. 97 at 8. *Cf.* Am. Compl. ¶¶ 27, 31, 45–46, 52–54; Dkt. 127 at 17–18; Dkt. 131 at 1–3.

3. **Reliance.** The Court rejected BTL's argument that the plaintiffs' purchase rested on their "subjective interpretation of the contractual terms," and found reliance adequately pleaded based on oral representations and the allegation that BTL "intentionally targets and solicits business owners that are unsophisticated in the industry of body contouring and skin tightening." AIM Dkt. 97 at 9–10. Plaintiffs allege the same. Am. Compl. ¶ 13. *Cf.* Dkt. 127 at 20; Dkt. 131 at 3.

4. **Duty of care.** The Court declined to dismiss the negligent misrepresentation claim notwithstanding *Breiner*, because the duty question is "an issue for which the law is not clearly and unambiguously settled," and allowed BTL to renew the argument at summary judgment. AIM Dkt. 97 at 10–11. *Cf.* Dkt. 127 at 20; Dkt. 131 at 5–6.

Dated: October 21, 2026

Respectfully submitted,

/s/ *David Stone, Esq.*
**GARY MANSFIELD, ESQ.**
**FBN: 61913**
**ARIANE WOLINSKY, ESQ.**
**FBN: 51719**
**DAVID STONE, ESQ.**
**FBN: 400432**
MANSFIELD BRONSTEIN & STONE, LLP
200 E. Broward Boulevard
Suite 1250
Ft. Lauderdale, Florida 33301
Phone: (954) 601-5600
Service Email Designation:
litigation@mblawpa.com

MARIAN A. KORNILOWICZ (BBO# 277680)
COHEN, SEGLIAS, PALLAS, GREENHALL & FURMAN, P.C.
1600 Market St.
32nd Floor
Philadelphia, PA 19103
mak@cohenseglias.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via the Court's electronic filing notification system upon all parties registered to receive electronic notice in this case on this 21st day of October 2026.

/s/ *David Stone, Esq.*
**DAVID STONE, ESQ.**

# Exhibit A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AIM GROUP, LLC D/B/A REVE BODY SCULPTING, and AMY LOUISE STONE,<br><br>Plaintiffs,<br><br>v.<br><br>BTL INDUSTRIES, INC., and MEGHAN AUSTIN,<br><br>Defendants. | Civil Action No. 1:26-CV-12129-AK |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

**ANGEL KELLEY, D.J.**

Plaintiffs AIM Group, LLC, and Amy Louise Stone bring this state law consumer protection, fraud, and negligent misrepresentation action against Defendants BTL Industries, Inc., and Meghan Austin, for the alleged fraudulent sale of Defendants' cosmetic medical equipment. Defendants move to dismiss the claims under Federal Rules of Civil Procedure 12(b)(6) and 9(b). [Dkt. 91]. For the following reasons, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Unless otherwise noted, the following facts are drawn from the Amended Complaint and assumed as true for purposes of this Motion. [Dkt. 84]. BTL sells medical equipment that uses electromagnetic energy and radiofrequency technology to help users tone their muscles and burn fat. [Id. ¶¶ 8-11]. As relevant here, the company's products include Emsculpt NEO and Cellutone. [Id.]. These products qualify as Class II medical devices and therefore may be sold

only to medical professionals. [Id. ¶ 11].

On or about August 12, 2022, Defendant Meghan Austin, a BTL sales representative, approached Plaintiffs at their weight loss center in Louisville, Kentucky, about purchasing BTL equipment. [Id. ¶¶ 11, 15]. At the meeting, Austin made several statements about Emsculpt products, including:

- Emsculpt "is selling so well and making customers good money";
- Emsculpt NEO "is the holy grail and, like death and taxes, [it] is a certainty in life";
- Emsculpt and/or Emsculpt NEO "providers payoff [the products] within a year or less";
- Emsculpt and/or Emsculpt NEO is "the number one requested service in all aesthetic and wellness right now" and "it is the number one purchase [sic] piece of equipment right now";
- Emsculpt and/or Emsculpt NEO "brings in 51% more new patients to practices";
- Providers "could be missing out on $50,000 to $60,000 per month" by waiting to provide Emsculpt services;
- "Providers servicing customers with BTL equipment near [Plaintiffs] are making good money";
- Plaintiffs will "make 2.5 times the investment on one system before needing to replace the applicators";
- "The price of each piece of equipment will go up starting January 2023 by at least $50,000";
- "BTL is doing $30 million in marketing";
- "BTL will provide Plaintiffs with a billboard to market [the] equipment";
- Austin is "personally invested in Plaintiffs' success"; and
- "BTL will provide a bus tour" to attract customers.

[Id. ¶ 19]. Austin also allegedly represented that Plaintiffs' purchase price for Emsculpt NEO would be discounted because they were purchasing used equipment and that Plaintiffs would be receiving Cellutone free of cost. [Id. ¶ 16]. She also advised that Defendants would not sell or attempt to sell BTL products to any competitors within a 20-mile radius of Plaintiffs' office. [Id. ¶ 18].

The same day, Plaintiffs entered into a contract with BTL to purchase Emsculpt NEO and Cellutone for $234,374.60. [Id. ¶¶ 21-22]. Plaintiffs then invested an additional $200,000 in "staffing, training, marketing, and business development to operate the [BTL equipment]." [Id.

¶ 24]. The equipment sales agreement contained a provision detailing a "Retail Price Maintenance ("RPM") price-restraint agreement with a minimum advertised price ("MAP") consumer pricing schedule," according to which Plaintiffs could receive certain benefits if they agreed to charge at least $850 per treatment session. [Id. ¶¶ 25-26]. The sales agreement also provided that if Plaintiffs sold the equipment and/or exited the agreement, they must pay BTL an unspecified recertification or transfer fee. [Id. ¶ 30]. The Amended Complaint alleges that the fee amount is approximately $100,000. [Id.].

According to the Amended Complaint, despite Defendants' representations to Plaintiffs, no market for Emsculpt services exists, and very few BTL providers have successfully sold Emsculpt services for the minimum $850 per-treatment price. [Id. ¶ 36]. Instead, providers have struggled to find customers for as little as $200 per treatment. [See id.]. As a result, the majority of BTL providers—including Plaintiffs—allegedly failed to recoup their investment in the equipment. [Id. ¶ 44].

On October 23, 2025, Plaintiffs filed suit in U.S. District Court for the Western District of Kentucky against four defendants. [Dkt. 1]. Pursuant to the forum selection clause in the parties' contracts, Judge Jennings transferred the claims against BTL to this Court. [Dkt. 71]. Plaintiffs then amended the complaint to add Defendant Austin as a party and to include only the claims and facts relevant to BTL and Austin. [Dkt. 84]. The four claims include: (1) violation of the Kentucky Consumer Protection Act, KRS 367.170; (2) fraud; (3) negligent misrepresentation; and (4) a request for declaratory relief. [Id.] On July 23, 2026, Defendants filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6) and 9(b). [Dkt. 91].

## II. LEGAL STANDARD

To survive a motion to dismiss, the complaint must state a claim that is plausible on its

face. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. See Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)). "Dismissal … is appropriate if the complaint fails to set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).

Under Federal Rule of Civil Procedure 9(b), the standard for allegations of fraud is higher than the normal pleading standard. To survive a motion to dismiss, a complaint alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The First Circuit has interpreted this language to require that a complaint "specify the who, what, where, and when of the allegedly false or fraudulent representation." Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004).

## III. DISCUSSION

As noted, Defendants move to dismiss all claims in the Amended Complaint for failure to state a claim. In their Opposition, Plaintiffs agree to dismiss Count I, so the Court addresses the three remaining claims.

**A. Fraud (Count II)**

Under Massachusetts law,[1] to state a claim of fraud, a plaintiff must demonstrate that the defendant "made a false representation of a material fact with knowledge of its falsity for the purpose of inducing [the plaintiff] to act thereon, and that [the plaintiff] relied upon the representation as true and acted upon it to his damage." Danca v. Taunton Sav. Bank, 429 N.E.2d 1129, 1133 (Mass. 1982) (quoting Barrett Assocs. v. Aronson, 190 N.E.2d 867, 868 (Mass. 1963)). Defendants contend that the Amended Complaint fails to identify any false or misleading statements; that Defendants lacked knowledge or intent (i.e., scienter); and that Plaintiffs failed to demonstrate reasonable reliance.

**1. False or Misleading Statements**

The Amended Complaint identifies 16 allegedly false statements. Defendants argue that none of these statements are actionable because they are not false or misleading and/or constitute inactionable puffery, opinion, or projection. "A claim for misrepresentation generally requires proof that a factual representation (as opposed to an opinion or promise) was false." Mark Breiner DDS, LLC v. BTL Indus., Inc., No. 24-CV-12413, 2026 WL 114405, at *10 (D. Mass. Jan. 15, 2026). "It is axiomatic that a defendant will not be liable for an affirmative false statement if the statement is, in actuality, *not false*." In re Access Cardiosystems, Inc., 404 B.R. 593, 641 (Bankr. D. Mass. 2009), aff'd, 488 B.R. 1 (D. Mass. 2012).

On the Court's review, two of the statements identified by Plaintiffs contain actionable

---

[1] Because this case was transferred here under 28 U.S.C. § 1404(a), the Court applies Massachusetts' choice of law rules. See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 64 (2013). Under those rules, Massachusetts courts generally enforce a contractual choice-of-law provision. See Hodas v. Morin, 814 N.E.2d 320, 324-25 (Mass. 2004). Because the parties' agreement provides that Massachusetts law governs, the Court applies Massachusetts state law to Plaintiffs' claims. [Dkt. 1-2 at 4].

statements of fact: (1) "Emsculpt and/or Emsculpt NEO brings [sic] in 51% more new patients to practices"; and (2) Emsculpt and/or Emsculpt NEO providers "payoff [the products] within a year or less." [Dkt. 84 ¶ 19(c), (e)]. These statements contain specific, numerical representations of present, rather than future, facts that could be shown to be false. See Breiner, 2026 WL 114405, at *10-11 (denying motion to dismiss where BTL Industries allegedly represented to provider that "Emsculpt and/or Emsculpt NEO purchases have an average payoff of four to five months"). Indeed, the Amended Complaint alleges that the majority of BTL providers failed to find patients, rather than paying off the products within a year or bringing in more new patients with the equipment. These two statements thus adequately plead fraud at this stage.

Seven of the other statements in the Amended Complaint, however, are puffery or inactionable future projections. Puffery consists of "exaggerated, vague, or loosely optimistic statements about a company." Delphi, 394 F. Supp. 2d at 341 (quoting In re Allaire Corp. Secs. Litig., 224 F.Supp.2d 319, 327 (D. Mass. 2002)). Future projections constitute "overly optimistic . . . projections" that fail to come to fruition; that is, the product fails "to be as profitable as the [initial projections] indicated was possible." In re Access Cardiosystems, Inc., 404 B.R. at 651, 674 (citing Glassman v. Computervision Corp., 90 F.3d 617, 635 (1st Cir. 1996)). Defendants' statements that Emsculpt and/or Emsculpt NEO was "selling so well and making customers good money," "is the holy grail," or is "the number one requested service" are inactionable puffery, as they comprise generic and exaggerated positive corporate statements. See Breiner, 2026 WL 114405, at *10 (finding inactionable puffery where BTL Industries stated "Emsculpt NEO is the holy grail," "is the number one requested service," "is the number one device in the industry," and that "[t]here is plenty of money to be made"); Suero v. NFL, 22-CV-31, 2022 WL 17985657, at *12 (S.D.N.Y. Dec. 16, 2022) (stating that the defendant's assertion

that MetLife Stadium is "the number one stadium in the world" is "classic 'puffery'"). Similarly, Defendants' statements that providers "could be missing out on $50,000 to $60,000 per month" by waiting to provide Emsculpt services; that providers will "make 2.5 times the investment on one system"; and that the price of equipment "will go up . . . by at least $50,000" are optimistic forward predictions about future events that are unverifiable, and thus are not actionable as fraudulent statements.

The remaining statements in the Amended Complaint are insufficient to state a claim because they have not been shown to be false or misleading. For example, Defendants allegedly represented that "BTL is doing $30 million in marketing," "BTL will provide Plaintiffs with a billboard to market [the] equipment," Austin was "personally invested in Plaintiffs' success," and that "BTL will provide a bus tour" to attract customers. [Dkt. 84 ¶ 19(j)-(m)]. However, the Amended Complaint contains no facts suggesting that BTL did not invest in marketing or provide the services described. The Amended Complaint also alleges that Austin represented to Plaintiffs that they purchased the equipment at a discounted price and that Defendants would not advertise to nearby competitors. [Id. ¶¶ 16, 18]. Though Plaintiffs allege that they later discovered that Defendants sold to a competitor at an even lower price and marketed to Blue Halo, a nearby competitor, they still fail to demonstrate that Defendants' statements were false or misleading. [Id.]. Defendants may offer different pricing structures for different clients at different times and forward-looking promises about refraining from advertising to competitors do not constitute fraudulent *present* claims (nor do Plaintiffs allege breach of contract). Furthermore, Plaintiff's allegation that Austin made certain oral representations that differed from the written contractual terms similarly fails, as Plaintiffs had the opportunity to read the written terms before signing and thus could have questioned any allegedly contradictory oral

promises. See Masingill v. EMC Corp., 870 N.E.2d 81, 89 (Mass. 2007) ("[I]f the contract was fully negotiated and voluntarily signed, [then] plaintiffs may not raise as fraudulent any prior oral assertion inconsistent with a contract provision that specifically addressed the particular point at issue." (quoting Starr v. Fordham, 648 N.E.2d 1261, 1268 (Mass. 1995) (internal quotation marks omitted))). These statements thus fail to adequately meet the pleading standards.

**2. Scienter**

Defendants next argue that even if Plaintiffs plausibly allege false or misleading statements, the Amended Complaint fails to establish scienter. In an action for fraud, a plaintiff must show scienter by "set[ting] forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009) (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992), superseded by statute on other grounds, Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737). "[A] complaint's general averment of the defendant's 'knowledge' of material falsity" is inadequate to meet this standard. Id. (quoting Greenstone, 975 F.2d at 25).

The Court finds that Plaintiffs adequately plead scienter. The Amended Complaint alleges—and the Court must accept as true—that Defendants knew that the market size for Emsculpt products was virtually nonexistent and that most providers failed to make a return on their investments. To support the allegation, Plaintiffs claim that BTL exercises substantial control over the market size by setting the RPM-mandated minimum price for treatments. [Dkt. 84 ¶ 44]. Moreover, it is reasonable to infer that, as a company engaged in selling proprietary products, BTL would have knowledge of the market size of its equipment. The same applies to

Austin, who was a BTL sales representative. Accepting as true that the customer demand for Emsculpt services was limited, yet Defendants represented to Plaintiffs otherwise, scienter is adequately pleaded at this stage.

### 3. Reliance

Finally, Defendants argue that Plaintiffs fail to establish reasonable and detrimental reliance. According to Defendants, Plaintiffs' decision to purchase the equipment was based on their subjective interpretation of the contractual terms, not actual representations made by Defendants or in the terms of the financing agreements.

The Court finds that Plaintiffs have adequately alleged reliance at this stage. The allegations in the Amended Complaint are not, as Defendants suggest, limited to written statements within the financing agreement. Rather, Plaintiffs allege that Austin made certain oral representations about the profitability of Emsculpt equipment and the market size, which then influenced Plaintiffs into entering the financing agreement. Plaintiffs further allege asymmetrical knowledge and sophistication, noting that Plaintiffs are "non-medical professional[s]" and that "BTL intentionally targets and solicits business owners that are unsophisticated in the industry of body contouring and skin tightening so that they are unfamiliar with the market" and pricing. [Dkt. 84 ¶¶ 11-12]; see AT&T Corp. v. Stockard, No. 03-CV-11377, 2006 WL 6491253, at *13 (D. Mass. June 28, 2006) ("[A] recipient of information is entitled to rely on such information when it comes from someone who 'has or is in a position where he should have superior knowledge concerning the matters to which the misrepresentations relate.'" (quoting Zimmerman v. Kent, 575 N.E.2d 70, 75 (Mass. App. Ct. 1991))). Plaintiffs aver that they subsequently suffered pecuniary losses, such as through marketing and operational expenditures, when Defendants' representations about the market size

proved false. These allegations are sufficient to establish reliance at the motion to dismiss stage. Accordingly, Plaintiffs have adequately pleaded fraud.

**B. Negligent Misrepresentation (Count III)**

Defendants next move to dismiss Count III, in which Plaintiffs bring a claim for negligent misrepresentation. In Massachusetts, to recover for negligent misrepresentation, a plaintiff must prove that "the defendant (1) in the course of his business, (2) supplies false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information." Nota Constr. Corp. v. Keyes Assocs., 694 N.E.2d 401, 405 (Mass. App. Ct. 1998); see also Restatement (Second) of Torts § 552 (1977). The elements of negligent misrepresentation are essentially identical to the elements for establishing fraud, except the plaintiff need not show "intent to deceive or actual knowledge that a statement is false," PS Lit Recovery, LLC v. Pegasystems Inc., 814 F. Supp. 3d 190, 213 (D. Mass. 2026), but must show that "the person supplying the allegedly inaccurate information . . . owe[s] a duty of care to the person receiving it." Breiner, 2026 WL 114405, at *15.

Defendants argue that BTL did not owe Plaintiffs a duty of care, as the transaction involved an arms-length commercial sale. In support of their argument, Defendants cite a recent decision by another session of this court considering nearly identical facts and claims. In Breiner, Judge Saylor denied leave to amend to add a negligent misrepresentation claim, finding that BTL did not owe the plaintiff-provider a duty of care. Id. He explained that "the prototypical case" for establishing such a duty of care "involves a claim against an accountant, architect, lawyer, or other professional with a clear duty of care to his or her client." Id. From

this observation, he further concluded that "the ordinary commercial adversary bargainer ordinarily has no duty to use care in supplying information to those with whom he bargains." Id. (quoting Dan B. Dobbs et al., The Law of Torts § 667 (2d ed. 2025)). Thus, as a commercial seller, BTL owed no duty of care to the plaintiff-provider.

Given that Plaintiffs' fraud claim will be permitted to proceed, the Court declines to dismiss Plaintiffs' negligent misrepresentation claim at this stage. Defendants' challenge turns on whether they owed Plaintiffs a duty of care, an issue for which the law is not clearly and unambiguously settled. The Court is not persuaded that Plaintiffs' claims are foreclosed as a matter of law at the pleading stage and declines to resolve that issue now. Moreover, because of the similarity in the elements of fraud and negligent misrepresentation claims, discovery concerning the two sets of claims will likely overlap and may give rise to additional facts bearing on whether Defendants owed Plaintiffs a duty of care. Defendants may renew their arguments regarding Breiner at summary judgment, following development of the factual record.

### C. Declaratory Judgment (Count IV)

Finally, Defendants move to dismiss Count IV, arguing that because Plaintiffs fail to state a substantive claim, they likewise fail to sustain a claim for declaratory relief. As explained above, the Court finds that Plaintiffs have adequately pleaded both fraud and negligent misrepresentation. Accordingly, their request for declaratory relief survives a motion to dismiss. See Tocci Bldg. Corp. of N.J. v. Va. Sur. Co., 750 F. Supp. 2d 316, 320 n.2 (D. Mass. 2010) (citing MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 138 (2007)).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Count I (consumer protection) is dismissed, while Count II (fraud), Count

III (negligent misrepresentation), and Count IV (declaratory judgment) remain. Pursuant to Federal Rules of Civil Procedure 12(a)(4)(A), Defendants are **DIRECTED** to file a responsive pleading within **fourteen (14) calendar days** of this Order.

**SO ORDERED.**

Dated: September 30, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge